United States District Court
For the Northern District of California

**NOT FOR CITATION**

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

JAMIE D. HILL,

    Plaintiff,

    v.

THE COMMISSIONER OF THE SOCIAL SECURITY ADMINISTRATION,

    Defendant.

_____/

No. CV 06-00260 PJH

**ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING THE DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT**

Plaintiff Jamie D. Hill ("Hill") seeks judicial review of the Commissioner of Social Security's ("Commissioner") decision denying her claim for disability benefits pursuant to 42 U.S.C. § 405(g).  The action is before the court on the parties' cross motions for summary judgment, and Hill's alternative motion for remand.  Having read the parties' papers and administrative record and having carefully considered their arguments and the relevant legal authority, the court affirms the Commissioner's final decision.

**BACKGROUND**

Hill applied for disability and disability insurance benefits on May 8, 2003, alleging disability beginning on September 27, 2002.  Hill's claim was denied both initially and on reconsideration.  A.R. 14.  Hill filed a request for hearing, which was held before an administrative law judge ("ALJ") on April 26, 2005.  The ALJ rendered an "unfavorable" decision on May 23, 2005, finding Hill not "disabled" within the meaning of the Social Security Act ("the Act").  A.R. 14.  Subsequently, Hill requested review by the Appeals Council.  The Appeals Council denied the request for review in November of 2005 and

advised Hill that the ALJ's decision was therefore final.  A.R. 5.  Hill filed the instant appeal seeking judicial review pursuant to 42 U.S.C. § 405(g).

At the time of the hearing before the ALJ, Hill was 45 years old and had completed her high school education.  A.R. 15.  She had been employed in the past as a collector for a bank.  A.R. 15.  Hill alleges that she suffers a disability from a herniated disk and degenerative disk disease.  A.R. 15.  She claims she is unable to "sit for more than 30 minutes or stand for more than 40 minutes within a four hour period due to pain."  A.R. 15.  There was no triggering event or accident that caused Hill's impairments.

## STATUTORY AND REGULATORY FRAMEWORK

The Act provides for the payment of disability insurance benefits to people who have contributed to the Social Security system and who suffer from a physical or mental disability.  See 42. U.S.C. § 423(a)(1).  To evaluate whether a claimant is disabled within the meaning of the Act, the ALJ is required to use a five-step sequential analysis.  20 C.F.R. § 404.1520.  The ALJ may terminate the analysis at any stage where a decision can be made that the claimant is or is not disabled.  See Pitzer v. Sullivan, 908 F.2d 502, 504 (9th Cir. 1990).

At Step One, the ALJ determines if the claimant is currently engaged in any "substantial gainful activity," which would automatically preclude the claimant from receiving disability benefits.  See § 404.1520(b).  If not, at the second step, the ALJ must consider whether the claimant suffers from a severe impairment which "significantly limits [the claimant's] physical or mental ability to do basic work activities."  See § 404.1520(c).  The third step requires the ALJ to compare the claimant's impairment to a Listing of Impairments in the regulations.  See § 404.1520(d).  If the claimant's impairment or combination of impairments meets or equals the severity of any medical condition contained in the Listing, the claimant is presumed disabled and is awarded benefits.  Id.

If the claimant's condition does not match the Listing, the ALJ must proceed to the fourth step to consider whether the claimant has sufficient "residual functioning capacity"

("RFC") to perform his or her past work despite the limitations caused by the impairment(s). See § 404.1520(e).  If the claimant cannot perform his or her past work, at step 5, the Commissioner is required to show that the claimant can perform some other work that exists in significant numbers in the national economy, taking into consideration the claimant's "residual functional capacity, age, education, and past work experience."  See § 404.1520(f).

Thus, at steps one through four, a claimant must demonstrate a severe impairment and an inability to engage in his or her previous occupation.  See Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987); Andrews v. Shalala, 53 F.3d 1035, 1040 (9th Cir. 1995).  The burden shifts to the Commissioner only if the analysis proceeds to step five, in which case the Commissioner must demonstrate that the claimant can perform other work.  Id.

**ALJ'S FINDINGS**

After conducting the established sequential analysis, the ALJ determined that Hill was not "disabled" within the meaning of the Act.  A.R. 14.  At the first step, the ALJ determined that Hill had not engaged in substantial gainful activity since the alleged disability onset date.  A.R. 15.  At step two, the ALJ evaluated the severity of Hill's impairments and concluded that the medical evidence established that Hill has "severe" cervical spinal stenosis with left cervical radiculopathy."  A.R. 15.  With respect to step three, the ALJ ruled that Hill's impairments did not meet or equal any in the listings.  A.R. 15-16.

At step four, the ALJ had some difficulty ascertaining Hill's RFC because of conflicting evidence, including the findings and observations of various medical professionals and Hill's statements regarding the nature of her pain and extent of her physical limitations.  A.R. 16-17.  In particular, the ALJ noted the paucity of medical treatment documentation and concluded that the medical evidence in the record did not "support the degree of functional limitation alleged by the claimant."  A.R. 16.

3

The ALJ evaluated the findings of various doctors, including (1) the initial treating physicians, Dr. Wesley Chan and Dr. Samuel S. Jorgenson, who diagnosed Hill with stenosis of the cervical spine; (2) Dr. Kasra Amirdelfan, who saw Hill on six occasions and treated her with Norco and Zanaflex; (3) John Toth, D.O., an osteopath who saw Hill on two occasions, diagnosed her with chronic cervical spondylosis with spinal stenosis, and assessed significant limitations; (4) Howard Sturtz, M.D., an impartial consultant, who concluded that there were "no true positive objective physical findings [sic] except for slight decrease" in neck rotation and noted a 2001 MRI showed degenerative disc disease with <u>mild</u> stenosis; and (5) a state agency medical consultant, who observed that Hill's self-reported lying down 80% of the time was "within her voluntary control" and likely not necessitated by pain. A.R. 17. The ALJ relied heavily on Dr. Sturtz' findings, noting that Dr. Toth's dire restrictions "simply [did] not appear justified." A.R. 18. The ALJ concluded that Dr. Toth was not a "treating" physician because he only saw Hill twice, he prepared a report at the request of Hill's attorney, and his report was "at odds" with the rest of the evidence. A.R. 18.

Although the ALJ characterized Hill's case as "primarily a pain case," the ALJ did not find compelling evidence of debilitating pain. A.R. 18. The ALJ noted that there had been no changes in the amounts or types of Hill's pain medications, she only briefly attended a pain management clinic, and she admitted that she could perform "all of the activities of daily living." A.R. 18. Additionally, the ALJ found that the "number and frequency" of Hill's doctor visits did not comport with the degree of impairment she alleged. A.R. 18. The ALJ observed that "[t]here seems to be very little effort or concern with getting better . . . ." A.R. 18.

Based on the foregoing, the ALJ adopted an RFC between Dr. Sturtz' and Dr. Toth's proposals and concluded that the "claimant is able to lift a maximum of 20 lbs. and 10 lbs. frequently, with no <u>repetitive</u> handling, reaching, or fingering with the left arm and hand." A.R. 17. The ALJ also found that Hill "can do no prolonged positioning without the

4

opportunity to change from sitting to standing and vice versa." A.R. 17. The ALJ was not persuaded that Hill's "impairments cause functional limitations that preclude work activity." The ALJ concluded that Hill could do light work as defined in § 404.1567(b). A.R. 18. However, because Hill's past job required intensive use of her hands, the ALJ ultimately concluded that she could not return to that job given her current RFC. A.R. 18.

At the fifth step, the ALJ (in part influenced by the testimony of an impartial vocational expert) determined that, considering her age, educational background, work experience, and RFC, Hill was capable of performing a full range of light work that exists in the national economy. A.R. 19. Thus, the ALJ made a finding of "not disabled" based on the framework of Medical-Vocational Rule 202.00, Appendix 2. A.R. 19.

## DISCUSSION

### A.   Standard of Review

An ALJ's decision can be set aside only if "the ALJ's findings are based on legal error or are not supported by substantial evidence." Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir. 1999). Substantial evidence is relevant evidence that a reasonable mind might accept as adequate to support a conclusion. McAllister v. Sullivan, 888 F.2d 599, 602 (9th Cir. 1989). The court is required to review the administrative record as a whole, weighing both the evidence that supports and detracts from the ALJ's conclusion. Id. Where the evidence is susceptible to more than one rational interpretation, the court must uphold the ALJ's decision. Thomas v. Barnhart, 278 F.3d 947, 954 (9th Cir. 2002).

### B.   Issues

Hill seeks summary judgment and a judicial finding that Hill was disabled or, in the alternative, remand for additional administrative proceedings on whether Hill was disabled. Specifically, Hill argues the ALJ erred by:

(1) improperly rejecting the medical opinions of her treating physician; and

(2) improperly discounting her symptom testimony.

**C. Analysis**

    **1. The ALJ properly discounted Dr. Toth's opinion.**

The first issue is whether the ALJ improperly rejected the medical opinions of Hill's treating physician. To reach this issue, the preliminary question is whether Dr. Toth was Hill's treating physician.[1]

        **a. The ALJ properly determined that Dr. Toth was not Hill's treating physician.**

Hill contends that the ALJ's opinion that Dr. Toth does not qualify as a treating physician is erroneous because it is contrary to the evidence, it misapplies the law, and is not supported by substantial evidence. To substantiate this claim, Hill highlights her own testimony that Dr. Toth regularly prescribed her medications and that she saw him every other month. In addition, Hill maintains that even if she had not seen Dr. Toth that often, he still constituted her treating physician because he was employed to cure her. Hill also contends that Dr. Toth's sparse treatment history does not bear on whether Dr. Toth was a treating physician.

The Commissioner contends that the ALJ reasonably concluded that Dr. Toth was not Hill's treating physician. In particular, the Commissioner argues that Hill has not seen Dr. Toth a sufficient number of times for him to obtain a longitudinal picture of her impairment. The Commissioner highlights the dearth of medical records submitted by plaintiff and points out that, according to Hill's testimony, she only saw Dr. Toth in April 2004 and before that, several years previously.

Regardless of the source, the ALJ should evaluate every medical opinion he or she receives. § 404.1527(d). Ninth Circuit case law, however, distinguishes amongst the weight to be accorded to the opinions of three types of physicians: (1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians) and (3) those who neither examine nor treat the claimant

---

[1] The ALJ stated that "Dr. Toth had only seen claimant twice and then prepared a report at the behest of the claimant's attorney. I don't think that qualifies him as a 'treating' physician . . . ." A.R. 18.

6

(nonexamining physicians).  § 404.1527(d)(1) & (d)(2).  Holohan v. Massanari, 246 F.3d 1195, 1201-02 (9th Cir. 2001).

A treating physician is one who the claimant has seen with a frequency consistent with accepted medical practice for the type of treatment required for the claimant's medical condition.  Id.  In other words, the treating physician is the one who has an "ongoing treatment relationship with the claimant."  Benton v. Barnhart, 331 F.3d 1030, 1038 (9th Cir. 2003).  A nontreating physician is one who has examined the claimant but not established an ongoing treatment relationship.  § 404.1502.  The code further clarifies that a physician who has treated a claimant only a few times or after long intervals will still be considered a treating physician if the "nature and frequency" of visits is typical for the condition at issue.  Id.

Generally, a treating physician's opinion is entitled to greater weight than the opinions of doctors that do not treat the claimant because treating physicians are the professionals "most able to provide a detailed, longitudinal picture of [the claimant's] medical impairment(s) . . . ."  Id.; § 404.1527(d)(2).  The ALJ need not draw a bright line, however, because the doctor-patient relationship is "better viewed as a series of points on a continuum reflecting the duration of the treatment relationship and the frequency and nature of the contact."  Benton, 331 F.3d at 1038.

Both parties rely on Benton as factual and legal support for their arguments.  In Benton, the claimant, who brought an action on behalf of his deceased wife, appealed a district court's decision to affirm the denial of his wife's claim for disability insurance benefits.  Id. at 1032.  At issue in the case was whether § 404.1502, the definitional provision for "treating sources," precluded a supervisory physician from being considered a treating source.  Id. at 1036.  The court concluded that a supervisory physician can be considered a treating source and ultimately held that the doctor at issue in Benton, Dr Zwiefach, was a treating physician, albeit "relatively low on the continuum of treating physicians."  Id. at 1038-39.  In particular, the court noted that although Dr. Zwiefach had

only "seen the claimant once, he continued to oversee her care" and he was still employed to cure her. Id. at 1037.  In its analysis, the court emphasized that Dr. Zwiefach's report reflected both his opinions as well as those of the medical treatment team under his supervision. Id.

The instant case is factually distinguishable from Benton.  The plaintiff has not alleged, nor does the record support an argument, that Dr. Toth is a supervisory physician who oversees a medical team actively involved in Hill's treatment.  Hill argues that Benton stands for the proposition that a doctor can still be a treating physician despite not having seen the claimant for a year.  The Benton case, however, was a case of first impression that explicitly addressed supervisory physicians. Id. at 1036.  Thus, here, the fact that Dr. Toth saw Hill in April of 2004 and, before that, several years previous suggests that they did not have an ongoing treatment relationship.  A.R. 162.  Dr. Toth did not oversee a medical team that, despite his lack of contact, solidified collectively an ongoing relationship with Hill.

The ALJ properly concluded that Dr. Toth is not Hill's treating physician.  Although Hill indicated in her testimony that she saw Dr. Toth every other month and received regular prescriptions from him, the objective evidence in the administrative record indicates that Hill only saw Dr. Toth twice.  A.R. 72, 80, 119-20.  In addition, Hill erroneously asserts that the "deemed lack of occasions for knowledge of [p]laintiff's conditions" do not bear on a physician's status.  To the contrary, both the code and case law affirmatively state that the status of the treatment relationship and the nature and frequency of the claimant visits with a physician dictate whether that physician will be deemed a treating physician.  Thus, despite Hill's conclusory assertion that Dr. Toth was being employed to cure Hill, the aforementioned evidence supports the ALJ's conclusion that Dr. Toth was a nontreating physician.  Specifically, under the standard of review articulated in McAllister, there is substantial evidence that Dr. Toth was not Hill's treating physician.  McAllister, 888 F.2d at 602 (courts will affirm the ALJ's denial of benefits if the findings are supported by

1  substantial evidence and if the correct legal standards were applied.).

### b. Even if Dr. Toth is Hill's treating physician, the ALJ properly discounted Dr. Toth's opinion because the ALJ's decision was supported by substantial evidence.

Even if Dr. Toth is Hall's treating physician, his opinion is not necessarily conclusive. Benton, 331 F.3d at 1040. If the record has conflicting medical evidence, the ALJ is responsible for determining credibility and ultimately resolving the conflict. Id. Although a claimant's treating physician is generally entitled to deference, "the ALJ may reject the opinion of a treating physician in favor of a conflicting opinion of an examining physician if the ALJ makes 'findings setting forth specific, legitimate reasons for doing so that are based on substantial evidence in the record.'" Thomas v. Barnhart, 278 F.3d 947, 957 (9th Cir. 2002) (citing Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989)). The ALJ can "meet this burden by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." Id. In sum, the ALJ can reject the findings of a treating physician if "that opinion is brief, conclusory, and inadequately supported by clinical findings." Id.

Here, the ALJ properly discounted Dr. Toth's findings and appropriately set forth specific reasons for doing so. The ALJ stated that although he "appreciate[s] and carefully considered the dire restrictions imposed by the treating osteopath, [they] simply do not appear justified." A.R. 18. Specifically, the ALJ reasoned that Dr. Toth's findings were at odds with the other available medical evidence. A.R. 18.

Although Hill maintains that the ALJ's findings were broadly stated and insufficiently specific, the ALJ provided a detailed summary of the findings of Dr. Jorgenson, Dr. Chan, Dr. Amirdelfan, Dr. Toth, Dr. Sturtz and the state agency medical consultant. The ALJ discussed Dr. Toth's findings, noting Dr. Toth's determination that Hill had chronic cervical spondylosis with spinal stenosis and highlighting Dr. Toth's opinion that Hill would eventually need surgery. A.R. 16. The ALJ also evaluated Dr. Toth's assessment of significant limitations for Hill in reaching, handling, and fingering. A.R. 17.

Following his careful consideration of the record evidence, the ALJ chose to rely on the opinion of Dr. Sturtz, a board-certified orthopaedic surgeon. A.R. 17. Dr. Sturtz evaluated Hill and concluded there were no positive objective physician findings except for a slight degree in neck rotation and an October 2001 MRI that indicated that Hill has degenerative disc disease with mild spinal stenosis. A.R. 17. The ALJ noted Dr. Sturtz' statement in his discussion that the compression of the cervical spine was negative. A.R. 17, 104. The ALJ also weighed Dr. Sturtz' more conservative finding that the "claimant should be able to sit or stand for 2 to 3 hours at a time; walk 1 to 2 miles at a slow to moderate pace; and lift up to 25 lbs. frequently and 50 lbs. on occasion." A.R. 17.

Furthermore, the ALJ relied on the opinion of the state agency medical consultant, who determined that Hill's self-reported need to lie down 80% of the time was well within her voluntary control. The ALJ added that he was "not convinced that this [was] necessitated by pain." A.R. 17. The ALJ also analyzed Hill's daily living activities, noting that she drives, uses a home computer, reads, and walks once a week for 20 minutes. A.R. 17. Finally, the ALJ noted the disconnect amongst Hill's alleged pain levels, the brief duration of Hill's attendance at the pain clinic, and the low frequency of Hill's doctor visits.

Ultimately, the ALJ determined he was unconvinced that Hill's impairments were sufficient to cause functional limitations that would preclude work activity. The ALJ concluded that Hill's degree of functional limitations was between the assessment of Dr. Sturtz and Dr. Toth. In sum, the ALJ, pursuant to Thomas, set forth specific, legitimate reasons for discounting Dr. Toth's opinion, as evidenced by the ALJ's lengthy discussion of the conflicting opinions of Dr. Toth, Dr. Sturtz, the state agency medical consultant, and Hall's own testimony. The ALJ gave a detailed summary of the facts, interpreted those facts, and made detailed findings. As such, this court finds that the ALJ's discount of Dr. Toth's findings and ultimate RFC determination were proper and supported by substantial evidence.

2. **The ALJ Properly Evaluated Hill's Symptom-Reporting.**

The second issue is whether the ALJ properly accounted for Hill's symptom-reporting. Hill argues that Regenniter v. Comm'r, 166 F.3d 1294, 1296 (9th Cir. 1999), requires that when a claimant has presented evidence of impairments that manifest symptoms, and there is no evidence of malingering, the ALJ must find "clear and convincing" reasons for discounting symptom-reporting. Hill maintains that such findings must be "specific." With respect to the ALJ's analysis, Hill contends that the ALJ only made findings regarding Hill's testimonial statements and not regarding the content of her written statements. Finally, Hill argues that the ALJ had insufficient findings regarding both prongs of the two step symptom-reporting evaluation.[2] Hill states that the ALJ only made generalized criticisms, not specific findings and the ALJ mischaracterized Hill's ability to perform activities of daily living.

The Commissioner argues that the ALJ is not required to believe all of the claimant's statements regarding the severity of her symptoms. In particular, the Commissioner contends, citing Bunnell v. Sullivan, 947 F.2d 341, 346-347 (9th Cir. 1991) (en banc) and Orteza v. Shalala, 50 F.3d 748, 750 (9th Cir. 1994), that an ALJ may reject the claimant's subjective complaints if the ALJ makes specific findings demonstrating that the ALJ did not arbitrarily discredit the claimant's testimony. Based on the foregoing, the Commissioner noted that the ALJ partially credited Hill's testimony when he determined Hill indeed had hand limitations, despite Dr. Sturtz' and the state agency's conclusion that Hill did not have any significant hand limitations. The Commissioner also argues the ALJ made specific findings, namely that (1) Hill had little concern with getting better despite the "dire picture"

---

[2] Hill did not cite to legal authority that outlines this two step process. However, it appears that Social Security Ruling ("SSR") 96-7p provides such a two-step process for evaluating symptoms. 1996 WL 374186 (S.S.A. 1996). The regulations outline a two-step process for evaluating symptoms, namely that the adjudicator should (1) consider whether there is an underlying medically determinable impairment and (2) evaluate the effects of the claimant's symptoms to determine their functional limitations in the workplace if there is an underlying determinable impairment. SSR 96-7. This test is inapplicable, however, because the issue in this case specifically relates to the ALJ's evaluating Hill's credibility, which under 96-7p is a separate analysis.

11

1  she painted of her impairments, (2) she did not keep going to her pain management clinic,
2  (3) Hill's activities were incongruent with the statements of her functional limitations, and (4)
3  the state agency physician concluded that objective physical evidence to support Hill's pain
4  contentions was lacking.  In sum, the Commissioner argues the ALJ did not arbitrarily
5  discredit Hill's testimony.
6       In her reply, Hill argues that the Commissioner set forth an improper standard of
7  review for evaluating the ALJ's rejection of portions of the claimant's subjective complaints.
8  In particular, Hill argues that the proper standard of review requires that the ALJ's findings
9  must have been "clear and convincing" and maintains that the case law cited by the
10 Commissioner is unavailing.  Hill argues, for example, that the Commissioner improperly
11 relied on Bunnell because that case is based on Social Security Rulings that have been
12 subsequently superseded.  Consequently, the court must first determine the appropriate
13 standard of review prior to deciding whether the ALJ in this case properly considered Hill's
14 subjective complaints.

     **a.    Standard of Review**

16      Although the parties rely on Regenniter and Bunnell to support their contentions
17 regarding the appropriate standard of review, the most recent Ninth Circuit pronouncement
18 of the standard of review is Burch v. Barnhart, 400 F.3d 676, 680 (9th Cir. 2005).  In that
19 case, the court stated, "[u]nless there is affirmative evidence showing that the claimant is
20 malingering, the ALJ's reasons for rejecting pain testimony must be clear and convincing."[3]
21 Id. (citing Lester, 81 F.3d at 834).  The court added that the ALJ is obligated to articulate
22 the specific testimony he or she finds not credible and cite the evidence that undermines
23 the claimant's complaints.  Id. (citing Reddick v. Chater, 157 F.3d 715.  The ALJ must
24 consider the entire case record.  SSR 96-7p.[4]

---

[3]    Similarly, in Volkerts v. Comm'r Soc. Sec. Admin., 158 Fed. Appx. 916, 917 (9th Cir. 2005), the court noted that for an ALJ to make an adverse credibility determination, the ALJ must offer "specific, clear, and convincing reasons."

[4]    Social Security Rulings reflect the Commissioner's official interpretation of the Social Security Administration's regulations and, although they do not have the force of law, they are entitled to some deference if they are congruent with the Social Security Act and

12

Although Bunnell has not been overruled, the plaintiff is correct that the analysis in that case is largely focused on interpreting SSR 88-13, which was superseded by SSR 95-5p and ultimately SSR 96-7p.  SSR 96-7p (SSR 96-7p's purpose is to clarify when the evaluation of a claimant's symptoms and pain under 20 C.F.R. 404.1529 require a determination about the credibility of the claimant's own statements.).  Thus, the ALJ's reasons for rejecting Hill's statements regarding her symptoms and pain must be "clear and convincing" and articulated with specificity.

### b.  The ALJ articulated legally sufficient reasons for partially discrediting Hill's statements regarding her symptoms.

The final issue is whether the ALJ properly considered Hill's subjective complaints.  In Burch, the Ninth Circuit evaluated whether a claimant's disability insurance benefits were improperly denied and the court ultimately held, among other things, that the ALJ articulated "clear and convincing" reasons for ultimately rejecting the claimant's pain testimony.  Burch, 400 F.3d at 680.  In so holding, the court noted that an ALJ cannot reject a claimant's subjective reports of her symptoms solely because they are not corroborated fully by medical evidence as pain testimony can reveal limitations that are not demonstrated by objective medical evidence.  Id. (citing Bunnell, 400 F.2d at 345 and SSR 96-7p).  The court added that in evaluating the claimant's credibility,"an ALJ may engage in ordinary techniques of credibility evaluation, such as considering claimant's reputation for truthfulness and inconsistencies in claimant's testimony."  Id. (citing Tonapetyan v. Halter, 242 F.3d 1144 (9th Cir. 2001).

SSR 96-7p also indicates additional information the adjudicator should consider when assessing a claimant's credibility.  Specifically, SSR 96-7p requires the ALJ to consider (1) the claimant's daily activities, (2) the location, duration, frequency, and intensity of the claimant's symptoms/pain, (3) factors that could aggravate the symptoms, (4) the effects of medication, (5) treatment other than medication, (6) any measures the

---

regulations.  Avenetti v. Barnhart, 456 F.3d 1122, 1124 (9th Cir. 2006) (relying on Ukolov v. Barnart, 420 F.3d 1002, 1005 n.2 (9th Cir. 2005).

13

1 claimant has taken other than treatment, and (7) any other factors concerning the
2 claimant's functional limitations and restrictions. Id. (citations omitted).

3       The ALJ articulated clear and convincing reasons for partially rejecting Hill's
4 statements regarding the existence and degree of her symptoms and pain. In this case,
5 the ALJ considered and evaluated the objective medical findings of Dr. Chan, Dr.
6 Jorgenson, Dr. Amirdelfan, Dr. Toth, Dr. Sturtz and the state agency medical consultant. In
7 addition, the ALJ considered Hill's daily activities, her functional restrictions, and her use of
8 medications. Thus, the ALJ appropriately considered the entire record.

9       Moreover, the ALJ articulated specific reasons why he felt Hill's statements and
10 other evidence did not sufficiently demonstrate her alleged debilitating pain. For example,
11 the ALJ noted that Hill's static "medication level and her prescribed medications" do not
12 comport with her claims of severe pain.[5] A.R. 18. The ALJ also emphasized Hill's brief
13 attendance at the pain management clinic and the overall infrequency of her doctor visits.
14 A.R. 18.

15       Finally, the ALJ highlighted that Hill "can perform all of the activities of daily living,"
16 citing meal preparation and childcare. A.R. 18. Although Hill argues that she could not in
17 fact perform all of the activities of daily living because she spent 80% of her time lying
18 down," the ALJ noted this and ultimately determined that, despite Hill's statements, the
19 available, contradictory evidence was insufficient to support Hill's allegations. Based on the
20 foregoing, this court affirms the ALJ's partial rejection of Hill's symptom-reporting.

## CONCLUSION

22       For the foregoing reasons, Hill's motion for summary judgment is DENIED. The
23 Commissioner's cross-motion for summary judgment is GRANTED. This court finds that:

---

[5] Hill argues that she started taking less pain medication after she stopped working. A.R. 154. Hill stated that Norco made her "kind of spacey" and because she had "taken [Norco] for so long," she could not take more than two a day because it would make her sick. A.R. 154. The ALJ's findings are still warranted, however, because it is reasonable for the ALJ to conclude that if Hill's pain was still debilitating and her current medication was making her sick, she would have made concerted efforts to modify the type of medication she was on.

14

(1) the ALJ properly rejected the opinions of Dr. Toth, regardless of whether he was or was not Hill's treating physician and (2) the ALJ properly evaluated Hill's symptom-reporting.

Dated: October 27, 2006

**IT IS SO ORDERED.**

_____
PHYLLIS J. HAMILTON
United States District Judge